HUMPHREYS v. THIRD NAT. BANK OF CINCINNATI, OHIO.

(Circuit Court of Appeals, Sixth Circuit. July 8, 1896.)

No. 358.

1. REVIEW ON APPEAL—FINDINGS OF FACT.
   When the finding in the circuit court involves mixed questions of law and fact, and is general in its form, nothing is open to review in the circuit court of appeals except the rulings made in the progress of the trial, the findings being conclusive as to the facts.

2. SAME—EXCEPTIONS.
   When a jury is waived in the circuit court, a party wishing to raise any question of law upon the merits in the court above should request special findings of fact, framed like the verdict of a jury, and reserve his exceptions to those special findings if he deems them not sustained by the evidence; and if he wishes to except to the conclusions of law drawn by the court from the facts found he should have them separately stated and excepted to.

3. ESTOPPEL—EVIDENCE.
   An indorser on certain notes made a compromise with the indorsee by which he gave his notes for a part of the amount due, he to be released from liability on the original notes upon payment of the compromise notes at maturity. Held, that evidence that money with which he made part payments on the compromise notes was borrowed by him was not admissible on an issue as to whether the indorsee, after accepting such payments, was estopped to hold him liable on the original notes.

4. ACCORD AND SATISFACTION.
   An indorsee of a note agreed to receive, in compromise of an indorser's liability thereon, secured notes for a less amount, the indorsee to have the right, if the compromise notes were not paid when due, to sue the indorser for the balance remaining due on the original notes, after applying thereon the partial payments made on the compromise notes, and the proceeds of the security given therefor. Held, that the indorsee did not, by receiving part payments on the compromise notes after their maturity, waive the right to sue the indorser on the original note. 66 Fed. 872, affirmed.

5. SAME.
   Nor did he waive his right to proceed on the original note by failing to tender back the compromise notes, or the security given therefor.

6. PAROL EVIDENCE—JUDGMENT.
   Where the facts do not appear on the face of a judgment, oral evidence is admissible to show how credits thereon came to be allowed, and what they were allowed for.

In Error to the Circuit Court of the United States for the Western Division of the Southern District of Ohio.

This was an action at law by the Third National Bank of Cincinnati, Ohio, to recover the amount due on 14 promissory notes, aggregating about $24,000, from A. E. Humphreys, a member of the firm of Ira A. Humphreys & Son, who were indorsers on said notes. The notes were made by the Boyd Manufacturing Company, a corporation, to C. W. and S. G. Boyd as payees, and indorsed by them to Ira A. Humphreys & Son, and by the latter firm indorsed to the Third National Bank. The notes were made in the latter months of 1886 and the early months of 1887, and by their terms were payable during the months of March, April, May, and June of 1887. They were not paid at maturity, and the liability of the indorsers was fixed by demand, notice, and protest. The maker and indorsers of the note became insolvent before the maturity of all the notes, and Ira A. Humphreys & Son, being desirous of making a settlement with the Third National Bank, entered into an agreement, the important provisions of which were as follows:

."The said the Third National Bank of Cincinnati, Ohio, agrees to fully release and discharge the said Ira A. Humphreys & Son as indorsers upon the several notes hereinbefore described upon the payment by said Ira A. Humphreys & Son of twenty-five per cent. of the indebtedness represented by said notes. The said sum so agreed to be paid by the said Ira A. Humphreys & Son to be evidenced by two promissory notes equal in amount, and payable as follows: One in sixty days after the date hereof, and one in twelve months after date hereof, with interest at the rate of six per cent. until paid. The said Ira A. Humphreys and A. E. Humphreys, doing business as Ira A. Humphreys & Son, in consideration of the release and discharge as aforesaid, hereby promise and agree to execute and deliver said notes to said bank within thirty days from the date hereof, and to cause the payment of the same to be secured by the execution and delivery of a trust deed by Eleanor A. Humphreys and Ira A. Humphreys, her husband, conveying to the Third National Bank of Cincinnati a lot of ground in the town of Sissonville, Kanawha county, West Virginia, containing about seven acres of land, with the improvements thereon; also a tract of woodland situate in said county of Kanawha, known as the 'Huffman Tract,' and containing about three hundred acres; both free and clear of incumbrance; said deed to be drawn and executed in conformity to the laws of the state of West Virginia authorizing and empowering the Third National Bank to sell and convey the same upon the failure to pay said notes, or either of them, at maturity. It is further agreed by and between said parties that the Third National Bank shall hold and retain the original notes hereinbefore first described, and upon the failure of the said Ira A. Humphreys & Son to fully pay the two notes representing twenty-five per cent. of said original indebtedness at the maturity of the same, the amount that may be paid thereon by said Ira A. Humphreys & Son, or by the sale of the real estate described in said trust deed, shall be applied as a credit upon the original indebtedness of the said Ira A. Humphreys & Son as indorsers upon the notes first herein described, anything herein to the contrary notwithstanding, and the said bank shall have the right to enforce the full payment of the balance due thereon against said Ira A. Humphreys & Son."

Two notes were given as provided, and neither was paid at maturity. Payments were made on these notes, however, from time to time from 1887 until May, 1889. Releases were made by the bank under the trust deed to enable parts of the real estate to be sold, and the proceeds were credited on the two compromise notes. Requests were made by Humphreys from time to time for an extension of time on the two compromise notes, and, while a formal contract to extend the time was always refused, leniency was shown by the bank. In one or two of the letters, the bank threatened to bring suit upon the compromise notes. Promises were made by A. E. Humphreys to make partial payments from time to time, but were not always kept. The correspondence is set out in full in the record. The last payments made were the proceeds of sale of two towboats, now said to be the property of the mother of A. E. Humphreys, though that did not appear at the time to the bank. The proceeds of the boats amounted to $1,495, and this was credited April 26, 1889, and May 27, 1889. The total credits upon

the two notes aggregated about $4,000, leaving a balance due of $2,000, with interest. For 17 months thereafter, no payments were made, and A. E. Humphreys, having abandoned his business in West Virginia, left the state, and became a resident of Minnesota. On the 15th day of November, 1888, the Third National Bank had brought suit in the common pleas court of Brown county, Ohio, against the maker of the original notes; the Boyd Manufacturing Company, and the first indorsers, C. W. Boyd and S. G. Boyd. The petition in that case admitted certain credits in favor of the defendant because of dividends paid out of the insolvent estate of the maker. The answer filed by the Boyd Manufacturing Company pleaded that additional credits should be allowed on the ground that Ira A. Humphreys & Son, as indorsers, had paid to the plaintiff the sum of $6,000. There was no reply; and judgment was entered by the Brown county common pleas court for $18,691.38.

On the 27th of October, 1890, the bank brought suit upon the original notes against the maker and all the indorsers in a state court of West Virginia, and service was obtained on both members of the firm of Ira A. Humphreys & Son. Subsequently the bank brought this suit on the 29th of January, 1892, in the superior court in Cincinnati, and obtained service only on A. E. Humphreys, the defendant below, and the plaintiff in error. The cause was removed to the court below on the ground of local prejudice, and the diverse citizenship of the parties. The defenses made in the answer and the amendments to the answer by the defendant below were voluminous, and somewhat confusing. It will serve no good purpose to rehearse them. It suffices to say that the main defense was based on the ground of settlement, and the claim that the bank, by receiving payment on the compromise notes after their maturity, and by urging the defendant to make further payments thereon, and by leading the defendant to suppose that it did not intend to have recourse to the original notes, waived its right under the contract to hold the defendant liable on the original notes, elected to pursue its remedy on the compromise notes alone, and by inducing a change of position on the part of the defendant on the faith that this was the intention of the bank, estopped itself thereafter to rely upon the original notes as against the defendant. A further defense was based on the Brown county suit, it being claimed that the plaintiff had allowed therein a credit to the maker and principal debtor of $6,000, thus electing to treat the delivery of the two notes in compromise as a payment of the sum for which they were given. It was further contended that this release of the principal enured to the benefit of the surety or indorser, and that the judgment was binding as res judicata upon the parties to this suit, because they were privies to the parties to the Brown county suit, and therefore that the judgment in this case on the notes could not exceed that which was taken against the principal debtor in Brown county. It was also made to appear in the defenses that in August, 1892, some eight months after this suit was brought in the superior court of Cincinnati, A. E. Humphreys went to the Third National Bank, and tendered to its proper officers the balance due on the two compromise notes, with interest, and that this tender was refused. The money was not paid into court, and the tender was not kept good by an offer to pay in the answer. Pending the hearing, the bank, through its counsel, tendered to the defendant the two compromise notes, and also a release of the trust deed or mortgage of all the land which had been conveyed under the terms of the original agreement of compromise, less that which had been released previously to permit private sales.. This tender was excepted to, but allowed to go in evidence. The case, by written stipulation of the parties waiving a jury, was submitted to the court.

The court made the following findings in favor of the plaintiff: "This cause, having been duly heard, a jury being waived, was submitted to the court upon the pleadings and the evidence of the October term, A. D. 1894, of this court, and the court, having since said time had the same under consideration, now finds that the defendant, A. E. Humphreys, is indebted to the plaintiff on the several promissory notes set forth and described in the petition, after allowing all proper credits, the sum of twenty-six thousand and ninety-nine and $33/100$ dollars ($26,099.33). To all of which defendant, A. E.

Humphreys,. then and there excepts." The defendant then made a motion to set aside the finding and for a new trial for the following reasons: First. Error of the court in assessing the amount of recovery. Second. That the finding and decision are not sustained by sufficient evidence. Third. That the finding and decision are contrary to law. Fourth. That the finding and decision are contrary to law and the evidence. Fifth. The finding and decision were for the plaintiff, when they ought to have been for the defendant, A. E. Humphreys, to which finding and decision said defendant then and there excepted. Sixth. Newly-discovered evidence material to defendant, A. E. Humphreys, which he could not with reasonable diligence have discovered and produced at the trial. Seventh. Error of the court in excluding evidence offered by defendant, A. E. Humphreys, objected to by plaintiff, and excepted to at the time. Eighth. Error of the court in the admission of evidence offered by plaintiff, objected to by defendant, and excepted to at the time. And thereupon the court made this judgment entry: "This cause coming on to be heard upon the motion of the said defendant, A. E. Humphreys, for a new trial, and the evidence therewith submitted, was argued by counsel, and the court, being fully advised in the premises, doth overrule said motion. It is therefore considered by the court that the said plaintiff recover from the said defendant, A. E. Humphreys, the sum of twenty-six thousand ninety-nine and $83/100$ dollars ($26,099.33), as hereinbefore found to be due said plaintiff, with interest thereon from the 1st day of the present term of court, to wit, April 1, 1895, together with its costs herein expended, taxed at $——, and execution is awarded therefor." The bill of exceptions was allowed embodying all the evidence, and the case is here on a writ of error and certain assignments.

G. Bambach, Rankin D. Jones, and Francis B. James, for plaintiff in error.

Thos. B. Paxton, John W. Warrington, and John B. Boutet, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

TAFT, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The finding in favor of the plaintiff below was a finding which involved mixed questions of law and fact, and it was general in its form. It is well settled that in such a case nothing is open to review in this court except the rulings of the trial court in the progress of the trial, and that such rulings do not include the general finding of the circuit court, which performs the office and has the effect of a verdict of a jury; that is to say, it is conclusive as to the facts found. The strictness with which this rule is enforced is clearly set forth in the opinion of Judge Lurton speaking for this court in Insurance Co. v. Hamilton, 22 U. S. App. 386, 11 C. C. A. 42, and 63 Fed. 93, where all the decisions of the supreme court upon the subject are fully reviewed. This practice in the federal courts of appeal differs from that in the state courts of this circuit where it is open to counsel on writ of error by exception to a general finding to raise the question in the appellate court of the sufficiency of the evidence as a matter of law to sustain such finding. We fear that this difference in the practice is not sufficiently well known to counsel, and we think that their attention should be especially directed to the very technical and severe rule of the federal appellate courts in this respect. When a party in the circuit court waives a jury, and agrees to submit his case to the court, it must be done in writing; and if he wishes to raise any question of law upon the merits in the court above he should request special find-

ings of fact by the court, framed like a special verdict of a jury, and then reserve his exceptions to those special findings, if he deems them not to be sustained by any evidence; and if he wishes to except to the conclusions of law drawn by the court from the facts found he should have them separately stated and excepted to. In this way, and in this way only, is it possible for him to review completely the action of the court below upon the merits. A general finding in favor of the party is treated as a general verdict. A general verdict cannot be excepted to on the ground that there was no evidence to sustain it. Such a question must be raised by a request to the court to direct a verdict on the ground of the insufficiency of the evidence. If the views which the court takes of the law are deemed to be prejudicial to a party, he is required to except to the charge at the time that it is delivered, indicating those parts of it to which he objects. Where a cause is submitted to the court, however, the court cannot, in the nature of things, charge itself, and therefore no opportunity is presented to the party objecting to the views which the court entertains of the law to take his exceptions, unless he procures special findings of fact to be made and special conclusions of law to be drawn therefrom. We regret that in a number of cases brought before us the submission of a law case to a court upon stipulation has proved a trap to counsel in this court, and we say what we have with the hope that it may direct the attention of those who shall bring cases here in the future to the fact that great care must be taken in the preparation of a case for error proceedings, when no jury intervenes. The result in this case is that the general finding in favor of the plaintiff cannot be disturbed, because it involves a mixed question of law and fact, and is not reviewable here. We can only examine the rulings of the court on the evidence as shown in the bill of exceptions.

The first assignment of error is based on the refusal of court to allow the defendant below, after he had stated that he was insolvent at the time he made the agreement, to state what the amount of his debts was, and that of his liabilities. It was possibly relevant to show that Humphreys was insolvent to explain the position of the parties in making the agreement, but we think the extent of his insolvency was a circumstance altogether too remote to have any bearing on the issues in the case.

The second and third assignments of error were based on the refusal of the court to allow Humphreys to testify that he had procured the money with which to pay the credits on the compromise notes from his brother and his mother, and that he had agreed to repay them for these advances. It is claimed that these facts were important, as tending to show that Humphreys had changed his position in making the payments. We do not think that the claim is tenable. It is entirely immaterial where or how he procured the money with which to make the payments. The payment itself was a sufficient change of position to sustain an estoppel, if otherwise it could be sustained; and the fact that in making such payments he borrowed the money from some one else does not add to the force of the estoppel.

The fourth, fifth, and sixth assignments of error raise the question whether the court made an error in permitting the plaintiff bank to tender a release of the mortgage or deed of trust of the land company in accordance with the agreement of compromise, and to tender the compromise notes back to Humphreys. We think that there was no reversible error in the course which the court took, because we think that, whether it was competent or not to make the tenders which were made in open court, on the admitted facts of the case the plaintiff was entitled to recover without respect to these tenders, and the tenders were unnecessary to sustain the plaintiff's cause of action. This view requires us to consider the merits of the case and the main defense pleaded by the defendant below to the suit. That defense was treated by the court below as accord and satisfaction. The counsel for the plaintiff in error (the defendant below) insist that it is not the defense of accord and satisfaction, but it is what they call the defense of waiver, election, and estoppel. Their contention is that it was the duty of the bank, when the compromise notes fell due and were unpaid at that time, either to have recourse to the original indebtedness, and indicate to the defendant that it proposed to hold him upon that, or else to elect to proceed on the compromise notes; that it did elect to proceed on the compromise notes, thereby waiving its right to have recourse to the original indebtedness, and estopped itself from doing so thereafter, because the defendant was thereby induced to make payments upon the compromise notes as the only indebtedness upon which he could be held liable. In our opinion, this defense, under the agreement of compromise, is untenable. By the terms of that agreement the bank contracted to receive in full of its claim 25 per cent. of the amount evidenced by two compromise notes for $3,000 each, due respectively in 60 days and 12 months. The notes were secured by a deed of trust or mortgage of land in West Virginia, which authorized the Third National Bank to sell and convey the same upon the failure to pay said notes, or either of them, at maturity. It was further agreed that the bank might hold the original notes, and, upon the failure of Humphreys to pay the two notes in full at their maturity, the amount which might have been paid on those notes by Humphreys, or by the sale of the real estate, should be applied as a credit upon the original indebtedness, and that the bank should have the right to enforce the full payment of the balance due on the original debt against Humphreys. We think the meaning of this agreement is plain. It is that, if Humphreys did not pay the compromise notes, the security which he had given to pay them, and the partial payments he might have made on them, should inure to the bank for its benefit in the collection of the original indebtedness, and should be applied thereon. If both notes were unpaid, the bank had the right to enforce the security. It also had the right to have recourse to the original indebtedness. It necessarily followed, therefore, that the amount realized on the security could be applied on the original indebtedness. The bank did not at once have recourse to the original indebtedness when the two compromise notes were unpaid at their maturity. It permitted Humphreys to go on, and make payments on those notes,

and urged him to take them up.    As long as the bank occupied this position, it did waive the right to have recourse to the original indebtedness; that is, it postponed the time beyond the maturity of the compromise notes within which Humphreys, by paying the same, could make accord and satisfaction; but it did nothing more.    It did not, by its leniency to Humphreys, forfeit the right, ultimately reserved to it in the contract, of returning to the original indebtedness should Humphreys not pay the compromise notes.    Possibly—though we do not decide this—the bank might be held, by reason of its acceptance of a credit upon the compromise notes after maturity, to an obligation to give Humphreys a reasonable time thereafter within which to pay those notes and to complete satisfaction of the accord; but, instead of paying the compromise notes in full, Humphreys permitted 18 months after the last payment on the notes to go by, and then the bank sued him on the original indebtedness.    There was a delay of nearly two years longer, and then the bank brought a second suit on that indebtedness.    It was not until eight months after the second suit that Humphreys tendered payment of the compromise notes.    This was certainly not payment of them within a reasonable time, even if the dealings between the parties were such as to require the bank to give to Humphreys a reasonable time for the payment of the compromise notes after the last credit on them, before recurring to the original indebtedness.    Humphreys' final tender was, therefore, without effect.    When the bank recurred to the original indebtedness, the deed of trust, by virtue of the agreement of compromise, the terms of which had not been changed except by an extension of the time within which Humphreys might have completed the accord and satisfaction, became applicable as security to the original indebtedness. Hence there was no obligation of the bank to tender a release of the deed of trust as a condition of recovery on the original notes.    Nor was it necessary, as a condition of recovery on the original notes, that it should tender back the compromise notes.    The contract of compromise did not require it.    Recourse to the original indebtedness by the bank was not a rescission of any existing contract, but it was merely the pursuit of an express remedy accorded to the bank on the face of the compromise agreement.    It is true that, as soon as the compromise notes ceased to perform their office, Humphreys was entitled to have them from the bank, and that he might, in an equitable form of action, possibly compel their delivery to him.    But we are clearly of opinion that there is no analogy between the case at bar and those cases where a party's right of action resting on rescission of a contract cannot be asserted until all that has been received under the contract is tendered back.    We fully concur with the court below in the view that the defense here was only one of accord and satisfaction, and that there is not any ground whatever for the claim of waiver, election, and estoppel.

In Haggerty v. Simpson, 1 E. D. Smith, 67, a creditor had judgment, and it was agreed that, if certain compromise notes secured by indorsement were paid as they became due, satisfaction of the judgment would be acknowledged; and that, if either of the notes should not be paid at maturity, the partial payments on the notes should

be credited on the judgment, and the judgment should remain in full force for the balance. The notes were not paid as agreed, but the plaintiff extended the time of payment. They were not paid at the time to which they were extended. Plaintiffs then proceeded to enforce the judgment, and a few days after they took the proceedings the defendant offered to pay the balance due on the compromise notes and to stay the proceedings. The court refused relief to the defendant, saying:

"I am not aware of any principle of law or equity upon which it can be reasonably urged that the plaintiffs were not at full liberty to treat the privilege theretofore enjoyed by the defendant as at an end, and no precedent or authority in a like case is furnished us for such a claim. The agreement was a liberal one towards the defendant, and its strict enforcement is in no sense penal. He owed the whole debt. In law and in equity he still owes the whole debt, save the payments already made. * * * The defendant suffers no punishment. At most, he only fails to obtain an advantage for which he has paid nothing, which he was not bound to pay independent of the agreement. Here is no hardship nor oppression to be relieved against. * * * All he pays goes in extinguishment of his debt, and if he fails to receive the release which he anticipated it is his own fault. The agreement is still an act of liberality, and not of justice; and if the opportunity to avail himself of the plaintiffs' liberality is gone, they are, nevertheless, just, though they collect the whole balance due. The condition on which they agreed to be generous is broken, and justice is all he can ask. Besides, the ground on which courts of equity interfere to relieve against forfeitures is not that, if such interference be withheld, the anticipated profits of an agreement will not be realized. But it is that otherwise the party will suffer an unconscionable loss. Courts interfere to prevent oppression, which it is against equity and good conscience to allow, and not to restrain what, independent of the broken contract, is just in itself."

In Simmons v. Clark, 56 Ill. 96, a judgment creditor and his debtor made an agreement by which the debtor agreed to pay two compromise notes and the creditor agreed to release the judgment, which was for a much larger amount, on the payment of those notes. The court held that the agreement, properly construed, was that the payment of the notes was to operate as a satisfaction of the judgment. The debtor made partial payments upon the notes, and the creditor, after the maturity of the notes, received further payments; but the court held that the acceptance of those further payments did not affect his right to enforce the collection of his judgment. The supreme court of Illinois treated the question, as we do, as one of accord and satisfaction. It is well settled that an agreement by a creditor to receive something different from that which is owing in full settlement of his claim does not make a good plea in bar unless the agreement has been fully performed. Clifton v. Litchfield, 106 Mass. 34; Kromer v. Heim, 75 N. Y. 574; Hawley v. Foote, 19 Wend. 516; Hall v. Flockton, 16 Q. B. 1039; Bayley v. Homan, 3 Bing. N. C. 920; Wray v. Milestone, 5 Mees. & W. 21; Ex parte Gilbey, 8 Ch. Div. 248; Clarke v. White, 12 Pet. 178; In re Hatton, 7 Ch. App. 726; Early v. Rogers, 16 How. 599; U. S. v. Clarke, Fed. Cas. No. 14,812.

The last assignment of error which we deem it necessary to notice is the exception based on the introduction of the evidence of Mr. Paxton with reference to the Brown county suit, brought by the Third National Bank against the Boyd Manufacturing Company, the maker

of the note and the first indorsers. Humphreys, the defendant, was not a party to this suit, but the contention of his counsel was that, as between him and the bank, the judgment of the Brown county court was res judicata as to the amount of the debt; and also that the course of the bank in that case was an election to treat the notes of Humphreys as a full payment of $6,000 on the debt, though the notes were only partially paid. It did not appear upon the face of the judgment what credits had been allowed, and it was with reference to the allowance of the credits that the judgment was relied upon as res judicata. Whether the judgment could have any such effect between the parties to this suit, or whether, as claimed, it ought to have a prima facie effect, we do not decide. Conceding either of these claims, it was certainly competent, where the facts did not appear upon the face of the judgment itself, to introduce oral evidence to show how the credits in the judgment came to be allowed, and what they were allowed for. Cromwell v. County of Sac., 94 U. S. 351; Russell v. Place, 94 U. S. 606; Packet Co. v. Sickles, 5 Wall. 580.

The judgment of the circuit court is affirmed, with costs.