GARWOOD v. SCHEIBER et al *

(Circuit Court of Appeals, Ninth Circuit. October 1, 1917.)

No. 2924.

1. APPEAL AND ERROR ⬅850(1)—REVIEW—SCOPE.

In an action at law the question whether there is any evidence to support a general finding or verdict may be raised on writ of error, though not the question of the weight of the evidence.

2. APPEAL AND ERROR ⬅268(2)—REVIEW—SCOPE.

In an action tried to the court, the question whether there is any evidence to support a finding may be preserved by requests for special findings or by a general request to find for the aggrieved party and an exception to the refusal.

3. APPEAL AND ERROR ⬅268(2)—REVIEW—EXCEPTIONS.

Where, in an action tried to the court, there was a general finding for defendants, an exception to the judgment on the ground the evidence was insufficient to justify it does not present for review on error the question of the sufficiency of the evidence.

4. FRAUD ⬅58(1)—VENDOR AND PURCHASER—ACTIONS—EVIDENCE.

In an action by the purchaser to recover as an abatement damages for the worthlessness of a portion of the land, evidence held to show that the sale was in gross and that the vendors were guilty of no fraud or deceit.

5. FRAUD ⬅52—VENDOR AND PURCHASER—ACTION—EVIDENCE.

In an action to recover for the alleged worthlessness of the land sold, where the vendors contended the sale was in gross, evidence that shortly after plaintiff's purchase she was offered the amount paid is admissible, tending to show that the land was sold for a gross sum, as contended by defendants, and not by the acre.

6. APPEAL AND ERROR ⬅1050(2)—REVIEW—HARMLESS ERROR.

In an action by the purchaser on account of the alleged worthlessness of part of the land, evidence as to reclamation warrants for work after the purchase and the purchaser's suit to quiet title was harmless, though remote, and is no ground for reversing a judgment for the vendors.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied January 7, 1918.

In Error to the District Court of the United States for the Second Division of the Northern District of California; Wm. C. Van Fleet, Judge.

Action by Isabelle Garwood against Joseph Scheiber and others. There was judgment for defendants, and plaintiff brings error. Affirmed.

On September 27, 1911, the plaintiff, who is the plaintiff in error here, entered into a contract with Joseph Scheiber, Morris Scheiber, and John Scheiber, for the purchase from them of certain real property, described as containing 600 acres, more or less, "at and for the price of seventy-five thousand dollars," upon terms specified in the contract. The contract provided, also, for the purchase of the live stock and personal property used in connection with the lands, at prices named by a schedule attached thereto. The contract culminated in a deed to the real property and a transfer of the personal property, made by the Scheiber brothers to the plaintiff, on November 1, 1911. Later, on October 11, 1913, the plaintiff instituted the present action to recover for an abatement of the purchase price in two particulars, namely, $18,750, being the value of 150 acres of said real property at $125 per acre, which land she alleges to be worthless, and $13,000, being the reduced value of 200 acres, or the difference between $125 per acre and $60, which latter figure she alleges to be the true value of such acreage. Her cause of action is based upon fraud and deceit. She alleges that she was induced to purchase by the false and fraudulent representations of the defendants and their agents, namely, that the realty in question extended to a certain levee, and not beyond, that the entire tract of 600 acres was clear, arable land, that 250 acres were under cultivation and growing alfalfa, and that said ranch consisted of "six hundred acres of the finest alfalfa land in the state of California"; whereas, she further avers, said 600 acres are not in fact all level, or clear, or arable, or adapted to the growing of alfalfa, that only about 450 acres are outside of the levee, and that the 150 acres lying beyond the levee are practically worthless, 77 acres thereof being inundated and submerged with water, and not worth more than $10 an acre, while, as to the balance, it would cost plaintiff more than its value to reclaim it and put it in condition for cultivation and use for agricultural purposes.

The defendants deny all fraud and misrepresentation, and set forth that the sale of the real and personal property was the subject of and constituted a single transaction, and, by way of estoppel, that the plaintiff has previously instituted a suit to rescind the contract in toto.

The cause was tried by the court without the intervention of a jury, and a general finding was rendered for the defendants. A writ of error is prosecuted from the judgment which followed the finding.

Lloyd Macomber, of San Francisco, Cal., for plaintiff in error.

Arthur E. Miller, of Sacramento, Cal., and A. H. Hewitt, of Yuba City, Cal., for defendants in error.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). The case has been presented here as if turning upon the question whether the evidence supports the general finding of the court. Counsel for Miss Garwood says, however, that in the consideration of the facts in the case he neither asks nor expects the court to weigh evidence. This, according to the contention, resolves the inquiry into whether there is any evidence in the record to support the finding; not whether the same is supported by a preponderance or the weight of the evidence.

[1, 2] There is no rule of law or practice, that we are aware of, by which, in an action at law, the question of the weight of the evidence can be presented to the appellate court on writ of error. By proper and opportune motion and exception, the question may be presented to such court whether there is any sufficient evidence to support the general finding; and, if there is, the finding will not be disturbed. But the court will not look into the testimony for the purpose of determining what the finding should be according to the weight thereof. The manner of reserving questions of law, upon the merits for review, is stated by Taft, Circuit Judge, to be as follows:

The party "should request special findings of fact by the court, framed like a special verdict of a jury, and then reserve his exceptions to those special findings, if he deems them not to be sustained by any evidence; and if he wishes to except to the conclusions of law drawn by the court from the facts found he should have them separately stated and excepted to. In this way, and in this way only, is it possible for him to review completely the action of the court below upon the merits. A general finding in favor of the party is treated as a general verdict. A general verdict cannot be excepted to on the ground that there was no evidence to sustain it. Such a question must be raised by a request to the court to direct a verdict on the ground of the insufficiency of the evidence." Humphreys v. Third Nat. Bank, 75 Fed. 852, 855, 21 C. C. A. 538, 542.

"A request, however, to the court," as we have said in Societe Nouvelle d'Armement v. Barnaby, 246 Fed. 68, —— C. C. A. ——, recently decided, "if opportunely made, to find for the aggrieved party generally, upon refusal duly excepted to, will put the matter at large and compel a review of the facts to determine whether there is any sufficient evidence to uphold the general finding, in like manner as if a request had been made to the court to direct a verdict on the ground of insufficiency of the evidence."

[3] Now, the only exception saved respecting the sufficiency of the evidence to support the finding is found in the bill of exceptions, and is in the following language:

"Plaintiff excepts to said judgment and decision upon the ground that the evidence is insufficient to justify said decision, and that said decision is against law, and complains that said decision is entirely unsupported by the evidence and is contrary to the evidence, and complains of said decision as error, and excepts thereto"—specifying certain particulars in which it is claimed the evidence is insufficient, namely, among others, that it shows that the land was sold by the acre, and not in gross; that plaintiff bought the same as 600 acres, at the agreed price of $125 per acre; that the land was represented to her as 600 acres of first-class alfalfa land, and the evidence shows there was an absolute shortage of 70 acres; that there were only 450 acres which could be used for any agricultural purpose whatsoever; and that, of the 450 acres, 200 were subject to overflow to the extent that the raising of alfalfa thereon was a commercial impossibility, etc.

There is further statement in the record that, at the close of the session of the court of July 28, 1915, while the trial was still pending, but unfinished, counsel for plaintiff stated to the court that he desired it to render findings when making its decision, and to make findings of fact, but that the court declined to grant the request because it had not been made before the commencement of the trial. Otherwise, there was no request to make special findings, or to find generally for the plaintiff in any amount.

This record is insufficient to raise the issue, or to present to this court the question of the sufficiency of the testimony to support the

general finding. In the Barnaby Case, supra, there was contained in the general finding this language, "Defendant excepted to all the foregoing findings, and its exception allowed"; and we held that this was insufficient to raise the question, as to the sufficiency of the evidence to support the general finding, in this court. The proposition is fully discussed in that case, and reference is made thereto without further elaboration here.

[4] However, notwithstanding this failure to bring the question properly into the record for the consideration of the court, we have very carefully examined the whole of the testimony presented by the bill of exceptions, and are fully satisfied it is ample to support the finding. Indeed, we believe the weight of the testimony to be that way. A thing to be deprecated in the controversy is the action of Dr. Ramos. It appears that he had been an English army officer, was a graduate from the New York University, or from Harvard, perhaps from both, and was with Dr. Loomis in postgraduate work in the hospital in New York. Miss Garwood had implicit confidence in him, and was at the time engaged to be married to him. She advised with him in the purchase of the ranch. It does not appear, however, that he made any representations concerning the property that were not true, or that he gave her any advice that he would not have acted upon if he had been purchasing for himself. It does appear, however, that he prevailed upon the agents who were instrumental in bringing about the sale of the property to divide their commission with him to the extent of $1,500. Miss Garwood insists that she knew nothing of this transaction, and did not share in the amount received by Dr. Ramos. Yet there is testimony from which it is inferable that she had knowledge of it. She was herself insisting upon some division of the commission, though she protests that she was not aware that the division had been consummated until long after the purchase was closed. Dr. Ramos is dead, and his story of the matter cannot be had. The division of the commission made no difference, however, in the amount of the purchase price of the property that was asked by the Scheiber brothers, and received by them. When the transaction had been closed, the Scheibers paid the commission to the agents, and it was the commission only that was divided. The Scheibers had nothing to do with the division, nor did it at all enter into the consideration which they were to receive for the property.

The case was presented by the plaintiff on the theory that the sale was by the acre, while the defendants contended that it was a sale in gross; that is, the entire ranch, containing 600 acres, more or less, for a gross sum. The plaintiff claimed that there were 150 acres not suitable for cultivation, and that 70 acres of this were practically in the bed of the stream; Feather river having changed its course. And hence it is insisted that she should have an abatement of the purchase price, namely, $125 per acre, for the whole of the 150 acres, and a further abatement on 200 acres remaining to the extent of $65 per acre, because not adaptable as the best alfalfa land.

The 150 acres concerning which complaint is made consist of two tracts of about equal acreage. One of these lies between the levee and the new channel of Feather river, and the other lies beyond the

new channel, extending to the old. Mulvany says that now this latter is in the bottom of the river. This is refuted by the testimony of Von Geldern, who made a survey of the ranch in July, 1915, and found that the land between the two levees, that is, between the new levee and the artificial or new channel of Feather river, had an elevation of 14 feet above the water in the river, and the land to the west of the new channel of 12 feet above the old river channel, that is, "12 feet higher than the stage of the water at that time." So it cannot be that this latter tract is in the bed of the river. It is shown by the testimony that the former of the tracts is a wooded lot, and that both were and are used for pasturage. Beyond this, it appears that the wooded lot, if cleared, is adaptable for producing alfalfa.

The plaintiff herself testifies that she was never shown the correct boundaries of the land, and was assured that the whole tract was the finest alfalfa land in the state. This is the alleged fraud constituting the basis of her action. In this she is corroborated, in a way, by the testimony of Brown, who assisted Crane and Dike in making the sale, and that of Dike and Crane. Brown says that, at a time when he, Dike, Crane, Ramos, and Miss Garwood were met together in Sacramento, they talked about what could be done with this land, and continues:

"We represented to Miss Garwood that this land was particularly adapted to alfalfa and dairy business and that there were 600 acres of it. Mr. Dike made these representations, my best recollection is. He said that the land consisted of 600 acres of the very finest alfalfa land. It was stated to Miss Garwood by all three parties at that meeting that she could not obtain anything better in alfalfa, than it was—than those 600 acres. There was nothing said about any of the land not being as good as some of the rest of the land. As far as I remember, it was all represented as being uniformly of the finest kind, first class."

A little later he says the ranch was "sold as a total providing they took the stock." Brown was on the place on July 4, 1911, however, and according to his own statement, was informed that there was a lot beyond the levee where the Scheibers got their wood.

Crane testifies that he did not handle the deal, but that it was his impression that the land was first-class alfalfa land. He was present at the conversation alluded to by Brown, and all he has to say respecting it is that the land was represented by Dike as being first-class alfalfa land.

Previous to any negotiations with Miss Garwood, Dike and Brown tried to buy the land for themselves. Dike says:

"We stated the land was adapted to raising alfalfa; that 300 acres were in alfalfa and the balance being used for pasture, but most of it adapted to alfalfa."

Although present at the meeting Brown refers to, he makes no mention of the conversation which Brown attempts to narrate. Dike further says the land "was sold as a whole tract containing 600 acres."

What Bucholz had to say during the negotiations was not pertinent testimony in the case, as he was not an agent of the Scheibers, and had no authority to bind them.

In refutation of this testimony, it appears that before the sale was consummated Miss Garwood was brought in direct relations with the defendants themselves, and talked with them about the premises, the acreage, and the condition, quality, and adaptability of the land, and that they represented the conditions as they really existed. Miss Garwood was three times on the premises before the sale was closed. She went there on purpose to look them over, for her own satisfaction, and was shown the approximate boundaries. She was told by one of the Scheibers, at least, that a portion of the land lay over beyond the levee, and was asked to go upon the levee and see for herself. She excused herself by saying she had a lame ankle. We have no reason to doubt the credibility of the Scheibers in the least, and believe them to be straightforward. Upon the other hand, Brown and Dike seem, throughout the transaction and in their relations to the present trial, to be acting a dual rôle, and their testimony does not impress us as being altogether reliable. Furthermore, the more reliable testimony substantiates the view that the property at the time of the purchase was reasonably worth all the plaintiff gave for it. Mulvany, her own witness, says:

"For its size, the Scheiber ranch is rated as one of the best alfalfa ranches in the community, probably more alfalfa land in one body. The Scheiber ranch is the largest."

The land seeded to alfalfa, amounting to from 250 to 300 acres, is generally rated in value at $250 per acre. The 200 acres not seeded, but inside of the levee, are conceded by plaintiff to be worth $60 per acre; but this acreage is shown to be worth much more. So that there is here, without considering the land beyond the levee, more than full value, according to what Miss Garwood paid for the ranch. At any rate, she has lost nothing by the transaction. Nor has she been misled to her detriment, or defrauded out of anything. She has shown no reason whatever, in view of the whole testimony, why any part of the purchase price of the property she now holds should be abated to her. Seeing that she has not been defrauded to her loss or damage, the doctrine as to sale by the acre or sale in gross is without application, as it could not avail her in any event. The fraud being eliminated, she has no basis for her action.

This conclusion renders it unnecessary that the question of estoppel be considered.

Certain objections were made and exceptions reserved to the admission of testimony, which we will now examine.

[5] One Silva was permitted to testify that, shortly after the plaintiff had purchased the property, he offered her what she gave for it, and that she declined to accept his offer. The plaintiff was asked whether this offer had been made to her by Silva; the purpose of the testimony being to show the value of the property at the time of the purchase. Under the issue tendered, and in view of the theories of the respective parties in presenting the cause, we have no doubt of the competency and materiality of the testimony. It surely was pertinent in support of the theory of the case maintained by the de-

fendants. If the sale were in gross—and this is what the defendants maintained—it was pertinent to substantiate its gross value. It was for the court to say, under the testimony, whether the sale was in gross or by the acre, at a named price, and, in order that the case might be wholly tried, it was necessary to receive all the testimony offered by the parties tending to support their respective theories of it.

This discussion relates to plaintiff's exceptions 2, 3, and 4. Exception 7 is of like character.

[6] Exception 5 relates to the admission in evidence of a judgment roll in the case of Isabelle Garwood v. L. M. Curtis et al., being a record of the superior court of Sutter county, Cal. This was a case instituted by the plaintiff to quiet the title to the very property which she purchased from the Scheibers. The contract of purchase provided for the bringing of the suit if it was found from the abstract that it seemed necessary, and $250 of the purchase price was retained for the purpose of bearing the expense of such a suit.

Exception 6 pertains to the admission in evidence of a reclamation district warrant, payable to the plaintiff, which had to do with certain reclamation work that was done or was to be done subsequent to the purchase. The relevancy of these matters of testimony would seem to be somewhat remote to the issue presented, but their admission could have done the plaintiff no harm, and therefore is not reversible error.

Finding no error in the record, the judgment will be affirmed.